Good morning, Your Honor. Norm Blumenthal on behalf of the plaintiffs. I'd like to reserve, if I can, the last two minutes. Sure, Counsel. Just keep an eye on the clock, if you would, and manage your time. Okay, thank you very much. You bet. I'd like to start my discussion with a little bit of a hypothetical, since measles is in the news today and has something to do with our case. Counsel, could you just bring the mic a little closer to you? Oh, I'm sorry. Thank you. Okay. I apologize. I'd start my case with a hypothetical. Measles is in the news. And suppose today we were dealing with the State of California passed a law saying that everybody in the State of California needed to be vaccinated for measles. And in addition, they said you're going to be vaccinated with an unapproved drug by the FDA. The question is, would a 1983 claim there lie with the individuals in California to challenge whether or not that's a rational basis for using an unapproved drug? And the facts would be presented, and we'd go on from there. Change the facts in your hypothetical a little. All right. I get to do that. And make it a drug approved by the State. Again – Under those circumstances, would there be a 1983 claim? I think there is – well, I don't know the drug approval by the State in the Sherman Act. If a drug was approved – Suspend belief – suspend disbelief about whether the FDA allows the State to approve drugs. Okay. Assume that the State has vetted the drug and has said this is an appropriate drug to treat measles, and we have an outbreak and our children are being threatened and our elderly are being threatened, and we require everybody to walk in and get a vaccination. Violate the Constitution? I think there's an argument – there's a factual argument there in that the question still becomes, is there a rational basis for the use of that drug? As opposed to another drug, is what you're saying? As opposed to another drug. Okay. And that's my question. If the State has a process, as it appears to have here, for approving the particular additive that contains the fluoride, even if the federal government doesn't have that process or even if the federal government hasn't approved it, why is there a – what's the irrationality of using that additive? There is none. The rationality of it, because under the Safe Water Drinking Act, specifically under the Water Act, you cannot add a substance to the water for drug purposes. You can make water safer for consumption, but for drug purposes, under the Act, under Section – But you're not making a claim – are you making a claim for violation of the Safe Water Drinking Act? No. So here's where you're losing me. I don't know about Judge Hurwitz, but you're losing me because he's asked about your constitutional claim and has the question, what's irrational about this response by the government? Yeah, what's irrational about this response? If I were to come to you today and say, listen, I want everybody to raise their hand and tell me, we have a drug that's unapproved that contains arsenic and lead and other chemicals, and we're going to have you take this. It's never been approved by the FDA. It's never been approved by the state for medical purposes, on the one hand. And we have a pharmaceutical product, a sodium fluoride, that's been approved by the FDA, and it's safe for medicinal purposes that it's given. I want everybody to raise your hands if you're the one that's going to take the unapproved drug that hasn't been approved. And so the concept is, and it goes back to Jacobson and – Well, you're telling me why I think – I'm just watching your time tick down. I think you're telling me why you think it's a bad idea. Judge Hurwitz's question, if I may – Thank you. Why is it not a rational choice by the government? It's not a rational choice because in doing this, they haven't had any approval. We don't know what the effect is. There's a difference between approval and rational choice. Okay. Rational choice is whether or not it's safe and effective. There is no evidence. No, rational choice is whether the state could rationally believe that it's safe and effective. And so tell me why, in making that determination, the state acted irrationally. In making that determination, there's no evidence that it is safe or effective. It's just hypothetical. They have no evidence. They have no tests. They have nothing whatsoever. The FDA hasn't approved it, nor have they tested it. So, in other words, they're coming out of nowhere to land. How many years of experience is there with fluoridated water? There's years of experience, but there's a difference, Your Honor, between – I remember the controversy when I was in college over fluoridated water. Yes, Your Honor. That was way over half a century ago. The important thing about this case is this is not about fluoridated water. This is about the selection of the substance to fluoridate the water with. Okay, so I'm understanding your argument to be that the government's response to this public health problem is irrational because the substance they've chosen, the substitute substance to use in place of fluoride, has not been adequately tested. It's not been tested. Is that right? Not only has it not been adequately tested, but the substance itself is a byproduct of fertilizer manufacturing. But we don't care where it comes from. We're just trying to get to your theory, to your claim. What's irrational? And is it the point that they're using a substance to respond to a public health problem that has not been adequately tested? Is that your theory? That is the start of my theory, yes. Okay, what are we missing? What you're missing is not only it hasn't been tested for safety or efficacy. So there's no rational basis. It's arbitrary. It's simply they picked it out of the sky. And to answer the judge's question, there's a big difference between sodium fluoride, which has been tested and has been agreed by the FDA to be safe, versus HFSA, which is the byproduct of making fertilizer. So there again, does it matter that it's a byproduct of making fertilizer? Well, it does, Your Honor, because what's in it? Why? Because what they ended up doing is what's in it is arsenic, lead, and sulfuric acid. They spray the sulfuric acid on the dirt, and they take the byproduct of it, the nitrogen, which is the agricultural product, and they use that on the plants, and then they put in our water supply this hazardous material. Can I ask you, I know your time's running down and you want to save some time for rebuttal, but I want to ask you a question that's troubled me about this case. Your clients, in effect, buy water from the defendant, correct? Correct, Metropolitan Water District. Right. Do they require you to use their water? I mean, is the state in some way forcing you to consume, your clients, to consume or use this water? Yes, as alleged in the complaint. Well, I know what the complaint alleges, but as you just said, you buy it from someone, and I suppose you cannot use it if you don't like it. You don't have a constitutional right to be supplied water. Why is there a 1983 element to this? You said they force you to use this bad water. How are you forced to use the bad water? Let me answer that by citing the case of Toland v. Cotton. It's the recent procuring case of the United States Supreme Court, which is unusual, reversing the Fifth Circuit in a summary judgment case, and what it said is you have to accept all the evidence that I've provided you as true in my allegation. I understand, but I'm asking you a question. You allege that your clients are forced to use this water, but you also allege that the Metropolitan Water District supplies this water to your clients. So those are slightly contrary allegations. And my question is, how are they forced to use this water? The water is ubiquitous. They're forced to use it because there's no other supply. They don't have the funds. They don't have the resources to go out and buy bottled water. It's in their showers. It comes through their skin. It goes into their products. It goes into their food. And the idea, like some of the courts in the States, you can boil it off. You can't boil off arsenic. You can't boil these things off. So what you're doing, Your Honor, is you're making factual assumptions. No, no, I'm reading your complaint. I'm trying to be fair to you. You're reading your complaint, and you say the district supplies this water to you. And I'm saying, since you have to pay for it, why don't you just not use it and take other measures? I think you've answered me. You have about a minute left. Do you want to reserve your time? Yes, I'd like to. Thank you, Your Honor. I appreciate that. Good morning. Mitch Tilner for the Appellee's Metropolitan Water District and Jeffrey Keitlinger. The California legislature has determined that the protection of dental health is a paramount issue of statewide concern. To address that concern, they have, the legislature, has required all large water agencies, including Metropolitan, to fluoridate their public water supplies. Why does it have to be this particular, why did they choose this particular chemical for the purpose of fluoridation as opposed to the older one? Well, that, there are a number of chemicals that qualify. How do they qualify? They satisfy the ANSI standard number 60, which is the condition in Metropolitan's permit. That's a state permit, then? That is a state-issued permit. Counsel has continued to argue that this drug, the use of this additive is irrational because the FDA has not approved it. Ten years ago, this attorney made the same argument to the California Court of Appeal in Kosho. The court there thoroughly examined that argument and rejected it, explaining that the FDA does not have any regulatory authority over Metropolitan's practices. That authority has been delegated by the EPA, not the FDA, by the EPA to the state of California. California has implemented strict regulations. They monitor the water. They test the water. They supervise Metropolitan. They have authorized and approved HFSA as one of the choices. Tell me again, and I know this is in the briefs and in the other cases, but walk through me again how this particular additive is approved so that Metropolitan Water may choose it from a list of additives. Metropolitan, in response to the legislation requiring Metropolitan to fluoridate its water supply, Metropolitan approached the Department of Public Health seeking an amendment to its domestic water supply permit to allow it to fluoridate. It has to seek approval. And the department investigated Metropolitan's plan. The department approved Metropolitan's proposal to fluoridate, and the department said, on condition that the fluoridating agent you use is one that has been tested and approved and satisfies ANSI Standard 60. Who puts together ANSI Standard 60? That's the American National Standards Institute. It's an independent third-party certifying and testing agency. And so Metropolitan had a choice. They could have used sodium fluoride, which is Plaintiff's preferred additive. They could have used other additives, as long as the additives satisfied the standard. Metropolitan selected this additive, as other jurisdictions have done, specifically the city of Escondido in the Kosho case selected the exact same additive, and the court there said, there is a rational basis for that choice. And more than 100 years ago, the Supreme Court told us it's not the job of the court or a jury to sit through scientific studies and to decide what the true science is and which is the safest, most effective additive. That decision on how best to promote public health is one for the legislature and one for the administrative agency. The court said, it's no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for protection of the public against disease. That's Jacobson at page 30. Plaintiffs here argue there are safer and less expensive alternatives to HFSA. We would rather metropolitan use that. Well, there are 16 million, roughly, residents in metropolitan service area. They may all have different preferences, but the job of deciding which is the best means of promoting public health is in our constitutional system delegated to the legislative branch. In Jacobson, the plaintiffs made the same argument. That was a case where a city passed an ordinance requiring all adult residents to be inoculated against smallpox, which is even a more invasive procedure than what we're involved here. As Judge pointed out, the plaintiffs here don't have to consume the water. No one's forcing it down their throats. In Jacobson, the residents were required to be vaccinated for smallpox, and the plaintiffs challenged that ordinance, making the same argument we hear here today. They argued this inoculation program is harmful. It's hurting us. We don't like it. It's ineffective, they argued. The U.S. Supreme Court said, we hear you, we understand what you're saying, but that's not relevant to the constitutional analysis. The constitutional analysis asks, could a rational legislature have determined that this is a mode of protecting the public health? Not would the court select that mode, not would the plaintiffs select that mode. Is it rationally related to the reasonable goal of protecting public health? And the court said, that's the end of our judicial analysis, yes. Counsel, is there a 1981 claim here? Yes, there is, Your Honor, but that's... You should have said, is there a valid 1981 claim here? But there's no valid 1981 claim. Would you like to speak to that? Your Honor, they didn't address that in their reply. Our brief explained why it requires an allegation of racial discrimination. There's no allegation of racial discrimination in the complaint. What's your response to the equal protection claim? That is also meritless. First of all, the practice of which they're complaining does not classify or categorize plaintiffs into any particular category. As I said, there are roughly 16 million residents in metropolitan service area. They're all treated the same with respect to this water supply, so there's no discrimination. If we agree with you on 1981 and 1983, is there any reason to reach the Safe Drinking Water Act preemption argument? There is not. Thank you. I would urge the Court to take a look at that Kosho opinion. Once again, as I said, it addressed all these issues thoroughly, comprehensively, and explained why there is a rational basis for selecting HFSA. That very chemical was at issue in Kosho, and the Court affirmed a dismissal of the complaint on alleged constitutional violations. So the complaint here should meet the same fate. It did meet that fate in the District Court, and we urge this Court to affirm. Thank you, Counsel. Thank you. I think there was a quote President Reagan said once. Everybody said, I'm from the government that you should be afraid of. I'm from the government, and I'm here to help. And I think this is one of these situations. We're all from the government. We work for you. I may have gotten it a little wrong. But worse than that, in all events, where's the evidence, Your Honor? This is on the pleadings. Toland v. Cotton. Why is he wrong that the agency the states relied upon, that put this on the list, ANSI, why is he wrong that that's not good enough? Because that's about safe drinking water. ANSI is a chemical organization, lobbyist. They put it on there so they have a place to dispose of a hazardous material and not only have to pay for disposing it, they get paid for putting it in our water. They make a profit off of this. But maybe the state has made a really bad decision using the ANSI standards. But isn't it rational for them to look to any organization that deals with these chemicals to see whether they are appropriate for use? You tell me why it's a bad decision. Tell me why it's irrational. It's irrational because there's no science. They presented no science. Because everybody shuts down the courts. That's what Toland v. Cotton is about. Give the people their day in court. That's why we have a Sixth Amendment. That's why we have jury trials. Don't be the judge of this.  Let them show why ANSI is right. Let them show it's rational. But that's not what you're doing. What you're doing is you're closing the courthouse doors. We have presented. There's no Ichbach case here. There's no Twombly case here. We have presented mountains of evidence to show that the substance they've chosen is harmful. And it hasn't been approved by the FDA. And they have no evidence. Does the FDA have a relevant mechanism for this approval process? No, they don't. The council tells us that the water authority is not under the FDA's regulation. Is it wrong about that? They're not wrong about that, Your Honor. But same thing if you look at the Doe v. Rumsfeld, Judge Sullivan there, the FDA was named a party in that case. And in Doe v. Rumsfeld, he found that use of the anthrax to be arbitrary based on the evidence. And the FDA never had any authority there to say anything. They could have, but they didn't. Counsel, you're well over your time. Thank you. Thank you, Your Honor. I appreciate it. Thank you very much. Thank you. Good night. Thank you both. That case will be submitted, and we'll move on to the next case in oral argument.
judges: Sentelle, Christen, Hurwitz